**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**WEST PALM BEACH DIVISION**
www.flsb.uscourts.gov

In re:                                                              Case No.:  18-23777-EPK
                                                                         Chapter 11

JORGE A. ALVAREZ, DDS, P.A.,

      Debtor-in-Possession.

_____/

## DEBTOR'S CHAPTER 11 PLAN OF REORGANIZATION

March 25, 2019

DEBTOR:                                              ATTORNEY FOR DEBTOR:
Jorge A. Alvarez, DDS, P.A.                  Van Horn Law Group, P.A.

By: /s/ Jorge A. Alvarez                         By: /s/ Chad Van Horn, Esq.
    Jorge A. Alvarez                             Chad Van Horn, Esq.
Its:  President                                        Florida Bar No. 64500
                                                             330 N. Andrews Ave., Suite 450
                                                             Fort Lauderdale, Florida 33301
                                                             Telephone: (954) 765-3166
                                                             Facsimile: (954) 756-7103
                                                             Email: Chad@cvhlawgroup.com

## TABLE OF CONTENTS

INTRODUCTION ...................................................................................................4

ARTICLE I – Definitions ........................................................................................4

ARTICLE II – Treatment of Claims and Equity Interests .....................................8
    A. Unclassified Claims ....................................................................................8
        1. Allowed Administrative Claims ...........................................................8
        2. Priority Tax Claims..............................................................................9
        3. U.S. Trustee Fees ................................................................................9
    B. Classes of Secured Claims .........................................................................10
    C. Classes of Priority Unsecured Claims........................................................10
    D. General and Special Unsecured Claims .....................................................11
    E. Classes of Equity Interest Holders .............................................................15

ARTICLE III...........................................................................................................15
    A. Designation of Impaired and Not Impaired Classes ..................................15
    B. Voting of Claims and Equity Interests.......................................................15

ARTICLE IV – Provisions Covering Distribution, General Provisions.................15
    A. Method of Distribution Pursuant to the Plan .............................................16
    B. Disputed Claims.........................................................................................17
    C. Disallowed Claims.....................................................................................17
    D. Disbursing Agent .......................................................................................17
    E. No Recourse ...............................................................................................17
    F. Amendments to Claims...............................................................................18
    G. Post-petition Interest on Claims ................................................................18
    H. Unclaimed Distributions ...........................................................................18

ARTICLE V – Assumption or Rejection of Executory Contracts and Unexpired Leases ...........18

ARTICLE VI – Provisions for Execution and Implementation of the Plan ..................19
    A. General .......................................................................................................19
    B. Funding ......................................................................................................19
    C. Effectiveness of Securities, Instruments and Agreements.........................20
    D. Approval of Agreements............................................................................20
    E. No Change of Control .................................................................................20
    F. Administration after the Effective Date .....................................................20
    G. Term of Bankruptcy Injunction or Stays ..................................................20
    H. Revesting of Assets....................................................................................20
    I. Injunction Related to Confirmation ............................................................21
    J. Votes Solicited in Good Faith ....................................................................21
    K. Legal Proceedings......................................................................................21
        1. Potential Bankruptcy Causes of Action ..............................................21
        2. Preservation of Claims and Causes of Action.....................................22
    L. Notices .......................................................................................................22

ARTICLE VII – Confirmation and Effectiveness of Plan.......................................23

A. Conditions Precedent to Confirmation.................................................................23
B. Effect of Failure ...................................................................................................23
C. Waiver of Conditions ...........................................................................................23

ARTICLE VIII – Retention of Jurisdiction ................................................................24

ARTICLE IX – Miscellaneous Provisions ..................................................................25
A. Effectuating Documents and Further Transactions................................................25
B. Post-Effective Date Fees and Expenses ...............................................................25
C. Amendment or Modification of Plan ....................................................................25
D. Severability ..........................................................................................................25
E. Filing of Additional Documents ...........................................................................26
F. No Admissions .....................................................................................................26
G. Substantial Consummation ..................................................................................26
H. Inconsistency........................................................................................................26
I. Remedy of Defects ...............................................................................................26

ARTICLE X – Conclusion..........................................................................................26

## INTRODUCTION

The Debtor-in-Possession, Jorge A. Alvarez, DDS, P.A, proposes this Chapter 11 Plan of Reorganization (as defined more fully below, the "Plan") pursuant to 11 U.S.C. § 1121 of the United States Bankruptcy Code.

Reference is made to the Statement (as defined more fully below, the "Disclosure Statement") accompanying this Plan for a discussion of, among other things, the major events of this Chapter 11 Case, treatment of Claims against and interests in the Debtor, preservation of litigation claims, risk factors, liquidation analysis, tax implications, alternatives to the Plan, a summary and analysis of this Plan, and certain related matters.

All Holders of Claims against and Equity Interests in the Debtor entitled to vote on the Plan are encouraged to read the Plan and the Disclosure Statement in their entirety before voting to accept or reject the Plan. Your rights may be affected. You should read these papers carefully and discuss them with your attorney. (If you do not have an attorney, you may wish to consult one.)

Subject to certain restrictions and requirements set forth in 11 U.S.C. § 1127, Bankruptcy Rule 3018, and in this Plan, the Debtor reserves the right to alter, amend, modify, revoke, or withdraw this Plan prior to the Effective Date (as defined below).

## ARTICLE I
*Definitions*

For the purpose of this Plan, the following terms shall have the respective meanings set forth below and such meanings shall be equally applicable to the singular and plural forms of the terms defined unless the context requires otherwise.

**"Administrative Creditor"** shall mean any creditor entitled to payment of an Administrative Expense Claim.

**"Administrative Expense"** shall mean any cost or expense of administration of this Estate allowed by the Court pursuant to Section 503(b) of the Bankruptcy Code, including, without limitation, any actual and necessary expenses of preserving the Estate and any actual and necessary expenses of operating the business of the Debtor.

**"Allowed Amount"** shall mean with respect to a Claim, (a) the amount of a Claim that was listed in the Debtor's Schedules (as originally filed in this Case) as not disputed, contingent or unliquidated, if the holder of such Claim has not filed a proof of claim with the Court within the applicable period of limitation fixed by the Court pursuant to Rule 3003(c)(3) of the Rules, or (b) if a holder of a Claim has filed a proof of claim with the Court within the applicable period of limitation fixed by the Court pursuant to 3003(c)(3) of the Rules: (i) the amount stated in such proof of claim or in the Schedules if no objection to such proof of claim or amount listed in the Schedules has been interposed within the applicable period of limitation fixed by the Code or Rules, or as otherwise fixed by the Court, or (ii) such amount as shall be fixed by an order of the Court which has become a Final Order, if an objection has been interposed within the applicable period of limitation fixed by the Code, the Rules, or the Court, or (c) with respect to a Fee

Request, such amount as shall be fixed by an order of the Court which has become a Final Order. In no event shall the Allowed Amount of any Priority Claim or Unsecured Claim include interest accrued on such Claim after the Filing Date.

**"Allowed Claims"** shall mean a claim (a) in respect of which a proof of claim has been filed with the Court within the applicable period of limitation fixed by Rule 3003 or (b) scheduled in the list of creditors prepared and filed with the Court pursuant to Rule 1007(b), and which is not listed as disputed, contingent or unliquidated as to amount, and in either case as to which no objection to the allowance thereof has been interposed within any applicable period of limitation fixed by Rule 3003, or by order of the court, or as to which any such objection has been determined by an order or judgment which is no longer subject to appeal or certiorari proceeding and as to which no appeal or certiorari proceeding is pending. Allowed claim shall not include interest on the principal amount of such claim subsequent to the Petition Date, except as may be otherwise provided herein.

**"Allowed Secured Claim"** means an Allowed Claim secured by the Property in an amount equal to the lesser of the Allowed Claim of that creditor or the value of the Property, as determined by the Court pursuant to 11 U.S.C. § 506, minus the amount of any Allowed Claim secured by a senior lien against the same Property, unless the holder of the claim elects pursuant to § 1111(b) in which event the Allowed Secured Claim shall be equal to the Allowed Claim.

**"Article"** shall mean one of the numbered Articles of the Plan.

**"Ballot"** shall mean the ballot accompanying the Disclosure Statement upon which holders of Claims and Equity Interests in each Impaired Class of Claims and Equity Interests that are entitled to vote on the Plan shall indicate their acceptance or rejection of the Plan and, if applicable, such other elections as may be made thereon are to be indicated.

**"Ballot Deadline"** shall mean the last day established by order of the Court for filing a Ballot with the Clerk of the Court.

**"Bankruptcy Code"** means Title I of the Bankruptcy Reform Act of 1978, as Amended, 11 U.S.C. § 101, *et seq.*

**"Bankruptcy Court"** means the United States Bankruptcy Court for the Southern District of Florida having jurisdiction over the Chapter 11 Case.

**"Bankruptcy Rules"** means the Federal Rules of Bankruptcy Procedure, as amended, as applicable to cases pending before the Bankruptcy Court.

**"Business Day"** shall mean a day other than a Saturday, a Sunday, or a day on which commercial banks in Miami, Florida are authorized or required to close.

**"Case"** shall mean the Chapter 11 Case No. 18-23777-EPK pending before the United States Bankruptcy Court for the Southern District of Florida, in which Jorge A. Alvarez, DDS,P.A. , is the Debtor.

**"Chapter 11"** means Chapter 11 of the Bankruptcy Code.

**"Claim"** shall have the meaning as set forth in 11 U.S.C., § 101 and include any right to payment or right to an equitable remedy for breach of performance if such breach gives rise to a right to payment, against the Debtor in existence on or as of the Petition Date, whether or not such right to payment or right to an equitable remedy is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, secured or unsecured.

**"Class"** shall mean a group of Claims or Equity Interests classified together pursuant to Article II of the Plan.

**"Confirmation Date"** shall mean the date upon which the Order confirming the Plan is entered by the Court in accordance with the provisions of Chapter 11 of the Code.

**"Confirmation Order"** shall mean an Order entered by the Bankruptcy Court, District Court, or other appellate Court confirming this Plan.

**"Consummation Date"** shall mean the date on which the Confirmation Order becomes a Final Order.

**"Court"** shall mean the United States Bankruptcy Court for the Southern District of Florida, in which the Debtor's Chapter 11 case, pursuant to which this Plan is proposed, is pending, and any court having competent jurisdiction to hear appeals or certiorari proceedings therefrom.

**"Creditor"** shall mean the holder of an allowed Claim.

**"Debtor(s)"** shall mean Jorge A. Alvarez, DDS, P.A.

**"Disclosure Statement"** shall mean the Debtor's Disclosure Statement in its present form or as may hereafter be amended, modified or supplemented in accordance with the terms hereof or in accordance with the Code.

**"Effective Date"** shall be the thirtieth (30th) day following the date upon which the Order is entered by the Court confirming the Plan in accordance with the provisions of Chapter 11 of the Code.

**"Equity Interest"** shall mean any interest in Jorge A. Alvarez, DDS, P.A, represented by membership interests.

**"Final Order"** shall mean an order or a judgment of the Court which has not been stayed and as to which order or judgment (or any revisions, modification or amendment thereof) the time to appeal or seek review or rehearing has expired.

"**Impaired Claim**" shall mean any class of creditors whose claims are impaired by payments as proposed in this Plan, in accordance with 11 U.S.C. §1124.

**"Person"** or **"Persons"** shall mean an individual, corporation, partnership, joint venture, trust, estate, unincorporated organization, or a government or any agency or political subdivision thereof or other entity.

**"Petition Date"** shall mean November 5, 2018 the date on which the Debtor filed its voluntary Chapter 11 Petition with the Court.

**"Plan"** shall mean this Chapter 11 Plan of Reorganization in its present form or as may hereafter be amended, modified or supplemented in accordance with the terms hereof or in accordance with the Code.

**"Priority Claim"** shall mean any claim, other than administrative expense or a tax claim, to the extent entitled to priority in payment under 11 U.S.C. §507(a).

**"Priority Creditor"** shall mean any creditor that is the holder of a priority claim.

**"Priority Non-Tax Claim"** shall mean any claim to the extent entitled to priority in payment under 11 U.S.C. §§ 507(a)(3), (4), (5), (6), or (7).

**"Priority Tax Claim"** shall mean any claim to the extent entitled to priority in payment under 11 U.S.C. § 507(a)(8).

**"Pro Rata"** shall mean proportionately, so that the ratio of the amount of consideration distributed to an account of a particular Allowed Claim or Equity Interest to the Allowed Amount of such Claim or Equity Interest is the same as the ratio of the amount of consideration distributed on account of all Allowed Claims or Allowed Equity Interests of the Class in which the particular Claim or Equity Interest is included to the amount of all Allowed Claims or Equity Interests of that Class, unless otherwise defined in the Plan. Whenever a Disputed Unsecured Claim or Disputed Equity Interest has not been finally resolved, an appropriate reserve for payment of such Disputed Unsecured Claim or Disputed Equity Interest shall be established so that there will be sufficient consideration available to make a Pro Rata distribution to the holder of such Disputed Unsecured Claim or Disputed Equity Interest upon final resolution of the dispute.

**"Professional Person"** mean attorneys, accountants, appraisers or other professionals within the meaning of Section 327 of the Bankruptcy Code, employed with the approval of the Bankruptcy Court.

**"Reorganized Debtor"** means Jorge A. Alvarez, DDS, P.A.

**"Rules"** shall mean the Federal Rules of Bankruptcy Procedure and the Local Bankruptcy Rules as adopted by the Court.

**"Secured Claim"** means any Claim that is secured pursuant to Section 506 of the Bankruptcy Code.

**"Secured Creditor"** means any Creditor that holds a Secured Claim.

**"Tax Creditor"** means any creditor that holds a tax claim.

**"Unimpaired Claim"** shall mean any class of creditors whose claim are not impaired under the Plan in accordance with 11 U.S.C. §1124.

**"Unsecured Claim"** shall mean all claims other than administrative expense claims, secured claims, priority claims, and tax claims.

**"Unsecured Creditor"** means any creditor that is the holder of an unsecured claim.

## ARTICLE II
*Treatment of Claims and Equity Interests*

The treatment of and consideration to be received by holders of Allowed Claims or Allowed Interests pursuant to this Article and the Plan shall be in full satisfaction, settlement, release, extinguishment, and discharge of their respective Claims against or interests in the Debtor and the estate, except as otherwise provided in the Plan or the Confirmation Order. The holders of liens satisfied, discharged, and released under the Plan shall execute any and all documentation reasonably requested by the Debtor or the reorganized Debtor evidencing the satisfaction, discharge and release of such liens.

**A. Unclassified Claims**

**1. Allowed Administrative Claims**

Each holder of an Allowed Administrative Claim shall receive, in full satisfaction, settlement, release and discharge of such Allowed Administrative Claim, either (A) an amount equal to the unpaid amount of such Allowed Administrative Claim in cash commencing on the later of (i) the Effective Date, (ii) the date that such Claim becomes an Allowed Administrative Claim by a Final Order, or (iii) a date agreed to by the Claimholder and the Debtor; or (B) such other treatment (i) as may be agreed upon in writing by the Claimholder and the Debtor, or (ii) as the Bankruptcy Court has ordered or may order. Notwithstanding the foregoing, Allowed Administrative Claims representing (a) liabilities, accounts payable or other Claims or obligations incurred in the ordinary course of business of the Debtor consistent with past practices subsequent to the Petition Date, shall be paid or performed by the Debtor in accordance with the terms and conditions of the particular transactions relating to such liabilities and any agreements or contracts relating thereto; provided, notwithstanding any contract provision, applicable law or otherwise, that entitles a holder of an Allowed Administrative Claim to post-petition interest, no holder of an Allowed Administrative Claim shall receive post-petition interest, on account of such Claim.

Compensation of professionals and reimbursement of expenses incurred by professionals are Administrative Claims pursuant to sections 503(b)(2), 503(b)(3), 503(b)(4) and 503(b)(5) of the Code (the "**Professional Fees** and **Expenses Claims**"). All payments to Professionals for Professional Fees and Expenses Claims will be made in accordance with the procedures established by the Code, the Rules and the Court relating to the payment of interim and final compensation for services rendered and reimbursement of expenses. The Court will review and determine all applications for compensation for services rendered and reimbursement of expenses.

All entities seeking an award by the Court of Professional Fees and Expenses shall file their respective final applications for allowance of compensation for services rendered and reimbursement of expenses incurred through the Effective Date pursuant to section 330 if the

Code and Rule 2016 by the date that is ten (10) days after the Effective Date or such other date as may be fixed by the Court.

### 2. Priority Tax Claims

Each holder of an Allowed Priority Tax Claim shall receive, at the sole discretion of the Debtor, and in full satisfaction, settlement, release, and discharge of and in exchange for such Allowed Priority Tax Claim, (A) an amount equal to the unpaid amount of such Allowed Priority Tax Claim in cash commencing on the later of (i) the Effective Date, (ii) the date that such Claim becomes an Allowed Priority Tax Claim by a Final Order, or (iii) a date agreed to by the Claimholder and the Debtor; (B) as provided in section 1129(a)(9)(C) of the Bankruptcy Code, cash payments made in equal monthly installments beginning on the Effective Date, with the final installment payable not later than the sixtieth (60th) month following the Petition Date, together with interest (payable in arrears) on the unpaid portion thereof at 18% from the Effective Date through the date of payment thereof; or (C) such other treatment as to which the Debtor and such Claimholder shall have agreed in writing or the Bankruptcy Court has ordered or may order; provided, however, that the Debtor reserves the right to pay any Allowed Priority Tax Claim, or any remaining balance of any Allowed Priority Tax Claim, in full at any time on or after the Effective Date without premium or penalty; and, provided further, that no holder of an Allowed Priority Tax Claim shall be entitled to any payments on account of any pre-Effective Date interest accrued on or penalty arising before or after the Petition Date with respect to or in connection with such Allowed Priority Tax Claim.

### 3. U.S. Trustee Fees

All fees required to be paid by 28 U.S.C. §1930(a)(6) ("U.S. Trustee Fees") will accrue and are required to be  timely paid until the case is closed, dismissed, or converted to another chapter of the Code. Specifically, the Debtor is obligated to  pay the U.S. Trustee the appropriate sum required pursuant to 28 U.S.C. §1930(a)(6), through the date of confirmation of this Plan, within fourteen (14) business days of the entry of an order confirming this Plan.  Furthermore, the Reorganized Debtor is obligated to  file with the Court post-confirmation Quarterly Operating Reports and pay the U.S. Trustee the appropriate sum required pursuant to 28 U.S.C. §1930(a)(6) for post-confirmation periods within the time period set forth in 28 U.S.C. §1930(a)(6),  based  upon all post-confirmation disbursements, until the earlier of the closing of this case by the issuance of a Final Decree by the Bankruptcy Court, or upon the entry of an Order by the Bankruptcy Court dismissing this case or converting this case to another Chapter under the U.S. Bankruptcy Code.

The following chart lists the Debtor's estimated Administrative expenses and their proposed treatment under the Plan:

| TYPE | ESTIMATED AMOUNT OWED | PROPOSED TREATMENT |
|---|---|---|
| Expenses Arising in the Ordinary Course of Business After the Petition Date | $0.00 (Paid in Regular Course of Business) | Paid in full on the Effective Date of the Plan, or according to terms of obligation, if later. The Debtor has been paying post-petition expenses in the normal course, and does not believe that any amounts are due and owing. |
| The Value of Goods Received in the Ordinary Course of Business Within 20 Days Before the Petition Date | $0.00 | N/A |

| Professional Fees, as approved by the Court | Est. $20,000.00 | Paid in full on the Effective Date of the Plan, or according to a separate agreement, or according to Court order if such fees have not been approved by the Court on the Effective Date of the Plan. |
|---|---|---|
| Clerk's Office Fees | $0.00 | N/A |
| Other Administrative Expenses | $0.00 | N/A |
| Office of the U.S. Trustee Fees | Est. $650.00 | Paid in full on the Effective Date of the Plan. |
| **TOTAL** | **Est. $20,650.00** | |

## B. Classes of Secured Claims

Allowed Secured Claims are claims secured by property of the Debtor's bankruptcy estate (or that are subject to set off) to the extent allowed as secured claims under 11 U.S.C. § 506. If the value of the collateral or setoffs securing the creditor's claim is less than the amount of the creditor's allowed claim, the deficiency will be classified as a general unsecured claim.

The following chart lists all classes containing Debtor's secured prepetition claims and their proposed treatment under the Plan:

| Class 1 – Secured Claim of Stearns Bank (POC-3)<br><br>Claim Amt: $61,193.96<br>Secured Claim: $47,425.00<br><br>30 Payment of $1,560.16 | Impaired | Class 1 consists of secured creditor Stearns Bank. On June 30, 2017, the Debtor entered into an agreement with Stearns for the purchase and financing over time of Vatec 13 D Smart Software. Stearns filed a UCC-1 to secure its interest in the software. At the time of filing, Stearns had a total claim of $61,193.96. Of that amount, $47,425.00 was secured and $13,768.96 was unsecured (POC-3). During the administration of the Estate, the Debtor has continued to pay as Adequate Protection, the contract payment of $1560.16 (Order at DE 42). The Proof of claim filed by Stearns Bank was bifurcated into a secured ($47,425.00) and unsecured claim ($13,768.00). Debtor's Plan proposes to continue the $1,560.16 payments until the secured claim is paid in full. The unsecured portion of the claim is included in the general unsecured class (Class 4). This Class 1 is impaired and entitled to vote. |

| | | |
|---|---|---|
| Class 2 – Secured Claim of SMS Financial XXVII, LLC("SMS") in the amount of $36,605.00<br><br>Total claim $174,928.78<br><br>Payment $1,000.00 per month for 36 months<br><br>The balance of $138,372.00 is classified as a general unsecured claim in class 4. | Impaired | Class 2 consists of claim of Secured Creditor SMS Financial XXVII, LLC("SMS").  On December 7, 2017 Debtor entered into a Fifth Forbearance and Note Amendment Agreement (the "Forebearance Agreement") with SMS, filing a UCC Financing Statement previously on June 2016. The Forebearance Agreement was for the repayment of $189,430.57. SMS did not file a Proof of Claim.  However, Debtor scheduled the debt owed at $174,928.78.  Pursuant to a Motion For The Use Of Cash Collateral, the value of Debtor's valuation of its assets as set forth in its schedules, the resulting Agreed Order (DE 42), and the scope of SMS's security interest, SMS's secured claim was set at $36,605.00 in this Plan.  SMS is currently receiving adequate protection payments in the amount of $500.00.  The Debtor's Plan proposes to pay back the secured claim over 36 months the amount of $ 1,000.00 per month.  This class is impaired and entitled to vote. The remainder due of $138,372.00 is included in Class 4 as a general unsecured claim. |

## C.  Classes of Priority Unsecured Claims

Certain priority claims that are referred to in 11 U.S.C. §§507(a)(1), (4), (5), (6) and (7) are required to be placed in classes. The Code requires that each holder of such a claim receive cash on the Effective Date of the Plan equal to the Allowed amount of such claim. However, a class of holders of such claims may vote to accept different treatment.

The following chart lists all classes containing Debtor's priority unsecured claims and their proposed treatment under the Plan:

| Class | Impairment | Treatment |
|---|---|---|
| **Class 3** Priority Claim of IRS $108.82 (POC 1-2) | Unimpaired | Class 3 consists of all Allowed Priority Claims against the Debtor.  The IRS has filed a claim against the Debtor for $108.82(POC1-2).  The Debtor's Plan proposes to pay the IRS claim in full on the Plan effective date.  This class is unimpaired and not entitled to vote. |

## D.  General Unsecured Claims

General unsecured claims are not secured by property of the estate and are not entitled to priority under 11 U.S.C. § 507(a). The following chart identifies the Plan's proposed treatments of Class 3, which contain general unsecured claims against the Debtor.

| Class | Impairment | Treatment |
|---|---|---|
| Class 4 – General Unsecured  Class<br><br>Total Allowed Claims Amount: $172,515.00<br><br>Plan Payment Term: 60 months<br><br> Plan Payments: $4,500.00 per quarter for 20 quarters | Impaired | Class 4 consists of all Allowed Unsecured Claims against the Debtor.   The class has five claims totaling $172,515.00.   Of that sum $138,372.00 represents the unsecured portion of SMS's claim and $13,768.00 represents the unsecured portion of the Stearns claim (POC-3).  The remaining members of the class total $20,425.57.   The Debtor's Plan proposes to pay the unsecured creditors 52.15% of their claims over 5 years through 20 quarterly payments of $4,500.00 each.  This |

| | | class is impaired and entitled to vote. |
|---|---|---|
| Percentage of Distribution:  52.15% | | |

The aggregate amount of claims included in Class 4 is $172,515.00.  Based upon the total quarterly distribution (over 20 quarters, or 5 years) of $4,500.00 the distribution of $90,000.00 equals 52.15%.  This distribution is higher than what allowed general unsecured claimants would receive in a hypothetical Chapter 7, in which case the Debtor estimates that such claimants would receive a distribution of 0.00%.

### Summary of General Unsecured Claims

| Creditor Name | Creditor Mailing Address | Payment Frequency | Payment Duration | Quarterly Payment Amount | Total Plan Payment | Amount Claimed |
|---|---|---|---|---|---|---|
| Stearns Bank | 500 13th Street Albany, MN 56307-6401 | Quarterly | 5 Years | $359.01 | $7,180.01 | $13,768.00 |
| SMS Financial XXVII, LLC | 6829 N 12th St Phoenix, AZ 85014-1109 | Quarterly | 5 Years | $3,608.05 | $72,161.00 | $138,372.00 |
| Capital One | PO Box 60599 City of Industry, CA 91716-0599 | Quarterly | 5 Years | $167.02 | $3,340.21 | $6,405.00 |
| Hoissen | 85 Ben Fairless Dr Fairless Hills, PA 19030-5012 | Quarterly | 5 Years | $252.06 | $5,041.16 | $9,666.66 |
| Square Capital Program | Attn: Capital Servicing 29053 Network Pl Chicago, IL 60673-1290 | Quarterly | 5 Years | $113.53 | $2,270.56 | $4,353.91 |
| TOTAL | | | | | $90,000.00 | $172,565.57 |

### Special Unsecured Creditors

| Class | Impairment | Treatment |
|---|---|---|
| Class 5 - Claims of "Hard Money-Lenders" totaling $274,650.14<br><br>Number of payments: 60 monthly<br><br>Percentage of distribution: 13.37%<br><br>**Debtor will waive its right to bring these preference actions as additional consideration for the compromise of the outstanding loan for each of the hard money lenders for the amounts being paid hereunder.**<br><br>**During the payments being made hereunder to the members of this class, an injunction against** | Impaired | Class 5 – Special Unsecured Creditors consists of the eight (8) "hard money lenders", none of whom have filed an allowed claim.   The total amount owed to these creditors is approximately $274,650.14, as follows:<br><br>Arcarius LLC                           $76,316.80<br>EIN Cap, Inc.                          $38,315.73<br>Forward Financing LLC            $40,630.39<br>Fundbox                                  $16,910.76<br>Hamilton Advance                    $23,840.00<br>Kabbage, Inc.                         $30,641.62<br>Yellowstone Capital, LLC          $28,205.00<br>Kings Cash Group, LLC            $19,790.46<br><br>The principal of the Debtor has personally guaranteed all of these loans. **The plan proposes for Dr. Alvarez, personally to pay each member of this class 13.37% of their claim over 5 years through 60 monthly payments** |

| prosecution of any claim or suit against the Debtor's president related to this bankruptcy shall exist as set forth below. | | of $611.32 each to be divided pro rata among the creditors. The total of the payments ($36,680.00) plus the Debtor's waiver of its right to pursue preference actions (as set forth below) shall be accepted by the special unsecured creditors in <u>full settlement</u> of the outstanding loan balance for each lender. |
|---|---|---|
| | | As set forth on the Statement of Financial Affairs, a total of $170,343.62 that was paid out by the Debtor **during the ninety (90) day period** before the filing of the Petition, as follows:<br><br>    Arcarius               $39,683.20<br>    Forward Financing   $34,274.02<br>    EIN Cap.           $21,134.27<br>    Fundbox           $21,353.45<br>    Hamilton Advance   $0<br>    Kabbage          $10,384.68<br>    Yellowstone      $43,514.00<br>    King's Cash Group,LLC  $0<br><br>Debtor, upon advice of counsel, believes that Debtor has possible <u>preference actions</u> against each of the lenders that are members of this class for the return of the monies paid by the Debtor during the ninety (90) period prior to the filing of the Petition.<br><br>**Debtor will waive its right to bring these preference actions as additional consideration for the compromise of the outstanding loan for each of the hard money lenders. During the payments being made hereunder to the members of this class, <u>an injunction</u> against prosecution of any claim or suit against the Debtor's president related to this bankruptcy shall exist as set forth below.** |

| Hard Money Lender Repayment at 13.37% | Creditor Mailing Address | Payment Frequency | Payment Duration | Monthly Payment Amount | Total Plan Payment | Amount Due |
|---|---|---|---|---|---|---|
| Arcarius LLC | 2125 Center Ave Fort Lee, NJ 07024-5859 | Monthly | 60 Months | $170.06 | $10,203.56 | $76,316.80 |
| EIN Cap, Inc. | 160 Pearl St Fl 5 New York, NY 10005-1631 | Monthly | 60 Months | $85.39 | $5,122.81 | $38,315.73 |
| Forward Financing LLC | 100 Summer St Ste 1175 Boston, MA 02110-2106 | Monthly | 60 Months | $90.54 | $5,432.29 | $40,630.39 |
| Fundbox | 300 Montgomery St Ste 900 San Francisco, CA 94104-1921 | Monthly | 60 Months | $37.69 | $2,260.97 | $16,910.76 |
| Hamilton Advance | 30 Broad St New York, NY 10004-2304 | Monthly | 60 Months | $53.13 | $3,187.41 | $23,840.00 |
| Kabbage, Inc. | 925B Peachtree St NE Ste 1688 Atlanta, GA 30309-4498 | Monthly | 60 Months | $68.28 | $4,096.79 | $30,641.62 |

| | | | | | | |
|---|---|---|---|---|---|---|
| King's Cash Group, LLC | 30 Broad St Fl 12 New York, NY 10004-2304 | Monthly | 60 Months | $44.10 | $2,645.99 | $19,790.46 |
| Yellowstone | 30 Broad St Fl 14 New York, NY 10004-2906 | Monthly | 60 Months | $62.86 | $3,771.01 | $28,205.00 |
| TOTAL | | | | | $36,680.00 | $274,650.14 |

*In summary, the Plan provides for an injunction against the prosecution of any claim or suit against the Debtor's president, related to the Debtor's bankruptcy, as long as the reorganized Debtor is not in breach of the Plan*. Specifically:

**EXCEPT AS EXPRESSLY PROVIDED HEREIN, OR TO OTHERWISE ENFORCE THE TERMS OF THE PLAN, AS OF THE CONFIRMATION DATE ALL PERSONS LISTED ON  DEBTOR'S SCHEDULE  H, WHO HAVE HELD, CURRENTLY HOLD, OR MAY HOLD A CLAIM, OTHER DEBT OR LIABILITY, AN INTEREST OR OTHER RIGHT OF AN EQUITY SECURITY THAT IS IMPAIRED OR TERMINATED PURSUANT TO THE TERMS OF THE PLAN, TO THE FULLEST EXTENT PERMITTED BY APPLICABLE LAW, ARE ENJOINED FROM TAKING ANY OF THE FOLLOWING ACTIONS FOR SO LONG AS THE REORGANIZED DEBTOR IS NOT IN DEFAULT OF ANY OBLIGATION UNDER THE PLAN OR ANY AGREEMENTS CONTEMPLATED BY THE PLAN, ON ACCOUNT OF ANY SUCH IMPAIRED OR TERMINATED CLAIMS, DEBTS OR LIABILITIES,INTERESTS OR RIGHTS:**

**(I)     COMMENCING OR CONTINUING IN ANY MANNER ANY ACTION OR PROCEEDING AGAINST DR. JORGE A. ALVAREZ OR HIS PROPERTY INTERESTS, OTHER THAN TO ENFORCE ANY RIGHT PURSUANT TO THE PLAN;**

**(II)    ENFORCING, ATTACHING, COLLECTING OR RECOVERING IN ANY MANNER ANY JUDGMENT, AWARD, DECREE, OR ORDER AGAINST DR. JORGE A. ALVAREZ OR HIS PROPERTY INTERESTS, OTHER THAN AS PERMITTED PURSUANT TO (I) ABOVE;**

**(III)   CREATING, PERFECTING, OR ENFORCING ANY LIEN OR ENCUMBRANCE AGAINST DR. JORGE A. ALVAREZ OR HIS PROPERTY INTERESTS;**

**(IV)   ASSERTING A SETOFF, RIGHT OF SUBROGATION OR RECOUPMENT OF ANY KIND AGAINST ANY DEBT, LIABILITY, OR OBLIGATION DUE TO DR. JORGE A. ALVAREZ ;AND**

**(V)    COMMENCING OR CONTINUING ANY ACTION AGAINST MR. DR. JORGE A. ALVAREZ, IN ANY MANNER, IN ANY PLACE THAT DOES NOT COMPLY WITH, OR IS INCONSISTENT WITH THE PROVISIONS OF THE PLAN.**

**FROM AND AFTER THE CONFIRMATION DATE, THE INJUNCTIONS DESCRIBED IN HEREIN SHALL BECOME EFFECTIVE, AND ALL HOLDERS OF CLAIMS AND INTERESTS SHALL BE ENJOINED FROM COMMENCING OR CONTINUING ANY OF THE ACTIONS DETAILED HEREIN FOR SO LONG AS THE REORGANIZED DEBTOR AND DR. JORGE A. ALVAREZ REMAIN IN COMPLIANCE WITH THE PLAN AND ANY AGREEMENTS CONTEMPLATED BY THE PLAN, AND EXCEPT AS SPECIFICALLY PROVIDED FOR IN THE PLAN.**

### E.  Classes of Equity Interest Holders

This Class is impaired. Equity interest holders are parties who hold an ownership interest (i.e., equity interest) in the Debtor. In a corporation, entities holding preferred or common stock are equity interest holders. In a partnership, equity interest holders include both general and limited partners. In a limited liability company ("LLC"), the equity interest holders are the members. Finally, with respect to an individual who is a debtor, the Debtor is the equity interest holder.

| Class | Impairment | Treatment |
|---|---|---|
| Class 6 – Allowed Equity Interests<br><br>Equity Interest Holders:<br>Jorge A. Alvarez - 100% (No insider claims) | Unimpaired | Class 6 - Equity Interests. Equity Interests consist of any share of preferred, common stock or other instrument evidencing an ownership interest in the Debtor, whether or not transferable, and any option, warrant or right, contractual or otherwise, to acquire any such interest.<br><br>***President/Equity holder Dr. Alvarez has agreed to personally make payments to the special unsecured creditor pursuant to this plan (Class 5) to provide new value and in exchange for the re-vesting of the shares of the company so that Dr. Alvarez will retain his 100% pre-petition equity interest in the Debtor post-petition*** |

### ARTICLE III

### A.  Designation of Impaired and not Impaired Classes

Classes 1, 2, 4 and 5 are impaired and are entitled to vote.

Class 3 is unimpaired and may not vote on the Plan.

### B.  Voting of Claims and Equity Interests

The Bankruptcy Code entitles only holders of impaired claims or equity interests who receive some distribution under a proposed plan to vote to accept or reject that plan. Holders of claims or equity interests that are unimpaired under a proposed plan are conclusively presumed to have accepted that plan and are not entitled to vote on it. Holders of classes of claims or equity interests that will receive no distributions under a proposed plan are conclusively presumed to reject that plan and, therefore, also not entitled to vote on it. 11 U.S.C. § 1126(f)-(g).

### ARTICLE IV

*Provisions Covering Distribution, General Provisions*

The rights afforded in this Plan and the payments and distributions to be made hereunder shall be in exchange, satisfaction, discharge, and release of all existing claims of any kind, nature or description whatsoever against Debtor or any of its assets or properties; and, except as otherwise provided herein, upon the Effective Date, all existing claims against the Debtor shall be, and be deemed to be, exchanged, satisfied, discharged, and released in full; and all holders of claims shall be precluded from asserting against the Debtor or its assets or properties or successors in interest, any other or further claim based upon any act or omission, transaction or other activity of any kind or nature that occurred prior to the Effective Date.

The distributions that are made to the various classes of creditors hereunder shall not be subject to levy, garnishment, attachment, or like legal process by any creditor of a senior class by reason of claimed contractual subordination rights, so that each creditor will have, receive, and retain the sole and exclusive benefit of the distributions set forth in this Plan.

Except as otherwise provided by this Plan, upon the consummation date, title to all assets and properties dealt with by this Plan shall vest in the Debtor or its successor in interest, free and clear of all claims and the Confirmation Order shall be a discharge of Debtor's liabilities, except as provided for herein.

Debtor is authorized to make all cash payments directly or through one or more disbursing agents who shall serve without further fee.

Except as provided herein and subject to confirmation of the Debtor's Plan of Reorganization, Debtor reserves the right to pursue any action against third parties, including but not limited to causes of action against creditors of the estate in state court, U.S. District Court, or appellate court against third parties, including causes related to the claims against this estate and any vendor actions that may later arise.

Creditors may amend their proofs of claims prior to the Confirmation of Debtor's Plan and the actual aggregate amount of Allowed Claims may differ significantly from the amounts used for the purposes of Debtor's estimates. As a result, Debtor reserves for itself the right to object to all objectionable proofs of claims. . The Debtor has been reviewing and analyzing Claims on an ongoing basis and has not identified any objectionable claims.

## A. Method of Distribution Pursuant to the Plan

(a)  Subject to Rule 9010, and except as otherwise provided herein, all distributions under the Plan shall be made by the Reorganized Debtor to the holder of each Allowed Claim at the address of such holder as listed on the Schedules and/or Proof of Claim as of the distribution record date unless the Debtor or Reorganized Debtor has been notified in writing of a change of address, including by the filing of a proof of Claim by such holder that provides an address different from the address reflected on the Schedules.

(b)  Any payment of Cash made by the Reorganized Debtor pursuant to the Plan shall be made by check drawn on a domestic bank or by wire transfer.

(c)  Any payment or distribution required to be made under the Plan on a day other than a Business Day shall be made on the next succeeding Business Day.

(d)  Any distributions of Cash or other property pursuant to the Plan that is unclaimed for a period of six (6) months after the distribution date shall constitute Unclaimed Funds and any entitlement of any holder of any Claim to such distributions shall be extinguished and forever barred.

(e) Unless otherwise provided herein, all initial distributions and deliveries to be made on the Effective Date shall be made on the initial distribution date. Subsequent distributions shall be made in accordance with the terms set forth in the Plan.

(f)  At the close of business on the distribution record date, the claims register shall be closed, and there shall be no further changes in the record holders of any Claims. The Debtor shall have no obligation to recognize any transfer of any Claims occurring after the distribution record date; provided, however, that the foregoing will not be deemed to prohibit the sale or transfer of any Claim subsequent to the distribution record date and prior to the Effective Date. The Debtor shall instead be entitled to recognize and deal for all purposes under the Plan with only those record holders as of the close of business on the distribution record date.

## B.  Disputed Claims

Notwithstanding any other provision of the Plan, if any portion of a Claim is disputed, the full amount of such Claim shall be treated as a Disputed Claim for purposes of this Plan, and no payment or Distribution provided under the Plan shall be made on account of such Claim unless and until such Disputed Claim becomes an Allowed Claim or Allowed Equity Interest (in whole or in Part). Debtor has indicated four disputed claims on its Schedules filed at (DE 1).

## C.  Disallowed Claims

All Claims held by Persons against whom the Debtor or Reorganized Debtor has commenced an Action under sections 542, 543, 544, 545, 547, 548, 549, and/or 550 of the Code, shall be deemed "disallowed" Claims pursuant to section 502(d) of the Code and holders of such Claims shall not be entitled to vote to accept or reject the Plan. Claims that are deemed disallowed shall continue to be disallowed for all purposes until the avoidance action against such party has been settled or resolved by Final Order and any sums due to the Estate from such party have been paid.

## D.  Disbursing Agent

The Reorganized Debtor, or such Person(s) as the Reorganized Debtor may designate with approval of the Court, will act as Disbursing Agent under the Plan with respect to all Distributions to holders of Claims and Equity Interests, and will make all distributions required to be distributed under the applicable provisions of the Plan.

## E.  No Recourse

Notwithstanding that the Allowed Amount of any particular Disputed Claim is reconsidered under the applicable provisions of the Code and Rules or is Allowed in an amount

for which after application of the payment priorities established by the Plan there is insufficient value to provide a recovery equal to that received by other holders of Allowed Claims in the respective Class, no Claim holder shall have recourse against the Disbursing Agent, the Debtor, the Reorganized Debtor, the Equity Security Interests or any of its current managers, officers, directors, employees, counsel, advisor, respective professionals, consultants, or Affiliates or their respective successors or assigns, or any of their respective property. However, nothing in the Plan shall modify any right of a holder of a Claim under section 502(j) of the Code. **THE ESTIMATION OF CLAIMS AND ESTABLISHMENT OF RESERVES UNDER THE PLAN MAY LIMIT THE DISTRIBUTION TO BE MADE ON INDIVIDUAL DISPUTED CLAIMS, REGARDLESS OF THE AMOUNT FINALLY ALLOWED ON ACCOUNT OF SUCH DISPUTED CLAIMS**.

## F.  Amendments to Claims

A Claim may be amended prior to the Confirmation Date only as agreed upon by the Debtor and the holder of such Claim, or as otherwise permitted by the Court, the Rules or applicable law. After the Confirmation Date, a Claim may not be amended without the authorization of the Court. Any amendment to a Claim filed after the Confirmation Date shall be deemed disallowed in full and expunged without any action by the Debtor, the Reorganized Debtor or the Estate, unless the Claim holder has obtained prior Court authorization for the filing of such amendment.

## G.  Post-petition Interest on Claims

Unless expressly provided in the Plan, the Confirmation Order, or any contract, instrument, release, settlement, or other agreement entered into in connection with the Plan or required by applicable law, post-petition interest shall not accrue on or after the Petition Date on account of any Claim.

## H.  Unclaimed Distributions

Upon return of any plan distribution, Debtor shall issue letter correspondence to the last known address indicated on Debtor's schedules or applicable proof of claim. Debtor's correspondence shall include a check for the applicable Plan Payment and provide all necessary case information to enable Creditor's determination of the applicability of Debtor's plan payment. Any payments made pursuant to Plan that are unclaimed for a period of six (6) months shall be forfeited by the holder and will be re-deposited in the Disbursing Agent's account in accordance with 11 U.S.C. § 347(b).

### ARTICLE V
*Assumption or Rejection of Executory Contracts and Unexpired Leases*

The Bankruptcy Code gives the Debtor the power, subject to the approval of the Bankruptcy Court, to assume or reject executory contracts and unexpired leases. Rejection or assumption may be effected pursuant to a plan of reorganization.

| Party to Executory Contract or Unexpired Lease | Description | Payment(s) |
| --- | --- | --- |

| PSM Andros Isle LLC | Premises at 8993 Okeechobee Blvd. Ste 102, west Palm Beach Fl 3341 | $2318.40-current |

Pursuant to sections 365(a) and 1123(b)(2) of the Code, all Executory Contracts and unexpired leases between the Debtor and any Person, as set forth in the table below, shall be deemed assumed by the Reorganized Debtor as of the Effective Date, except for any Executory Contract or unexpired lease (i) which previously has been assumed or rejected pursuant to an order of the Court entered prior to the Effective Date or (ii) as to which a motion for approval of the assumption or rejection of such Executory Contract or unexpired lease has been filed and served prior to the Effective Date.

**TO THE EXTENT THERE ARE ANY EXECUTORY CONTRACTS OR LEASES REJECTED BY THE DEBTOR, ANY PROOF OF CLAIM FOR DAMAGES ARISING FROM THE REJECTION OF AN EXECUTORY CONTRACT OR LEASE MUST BE FILED WITH THE COURT WITHIN THIRTY DAYS AFTER THE ENTRY OF THE ORDER CONFIRMING THE PLAN.**

### ARTICLE VI
*Provisions for Execution and Implementation of the Plan*

#### A. General

Upon confirmation of the Plan, and in accordance with the Confirmation Order, the Debtor or Reorganized Debtor, as the case may be, will be authorized to take all necessary steps, and perform all necessary acts, to consummate the terms and conditions of the Plan. In addition to the provisions set forth elsewhere in the Plan, the following shall constitute the means for implementation of the Plan.

#### B. Funding

Funds to be used to make payments under the Plan will be paid by the Debtor from its normal practice of dentistry  and as to the Special Unsecured Creditors, the president of the Debtor, Dr Alvarez shall make the 60 monthly payments of $611.32, each payment to provide new value and in exchange for the re-vesting of the shares of the company so that Dr. Alvarez will retain his 100% pre-petition equity interest in the Debtor post-petition.  To the extent that the Debtor wishes to prepay any amounts due under the Plan from exempt assets or other third party sources, the Debtor reserves the right to do so without penalty and to seek the entry of a final decree closing this case.

In order to assist in funding the Debtor's business operations under the Plan, the Debtor may retain any cash on hand, funds in its bank accounts, and amounts received from accounts receivable to pay accounts payable.  Accordingly, Debtor asserts that it is able to perform all of its obligations under the Plan, and as such, the Plan satisfies § 1129(a)(11) of the Code.

**YEARLY PLAN PAYMENTS**

| | | Year 1 | Year 2 | Year 3 | Year 4 | year 5 | totals |
|---|---|---|---|---|---|---|---|
| 1. | Stearns | 18,720 | 18,720 | 9,985 | 0 | 0 | 47,425 |
| 2. | SMS | 12,000 | 12,000 | 12,605 | 0 | 0 | 36,605 |

| 4 | GUNS | 18,000 | 18,000 | 18,000 | 18,000 | 18,000 | 90,000 |
|---|------|--------|--------|--------|--------|--------|--------|
| 5 | SUNS | 7,335 | 7,335 | 7,335 | 7,335 | 7,340 | 36,680 |
|   | VHLG FEE | 12,000 | 8,000 | 0 | 0 | 0 | 20,000 |
|   |      | 68,055 | 64,055 | 47,925 | 25,335 | 25,340 | 230,710 |

GUNS= General Unsecured Creditors
SUNS= Special Unsecured Creditors

## C.  Effectiveness of Securities, Instruments and Agreements

On the Effective Date, all documents and agreements entered into or documents issued pursuant to the Plan and/or any agreement entered into or instrument or document issued in connection with any of the foregoing, as applicable, shall become effective and binding upon the parties thereto in accordance with their respective terms and conditions and shall be deemed to become effective simultaneously.

## D.  Approval of Agreements

Entry of the Confirmation Order shall constitute approval of the Plan documents and all such transactions, subject to the occurrence of the Effective Date.

## E.  No Change of Control

Any acceleration, vesting or similar change of control rights of any Person or Entity in an arrangement with the Debtor that could otherwise be triggered by the entry of the Confirmation Order or the consummation of the Plan or any of the transactions contemplated thereby shall be deemed to be waived and of no force or effect.

## F.  Administration After the Effective Date

After the Effective Date, the Reorganized Debtor may operate its business, and may use, acquire, and dispose of its property, free of any restrictions of the Code and Rules.

## G.  Term of Bankruptcy Injunction or Stays

All injunctions or stays provided for in the Case under sections 105 or 362 of the Code, or otherwise, and in existence on the Confirmation Date, shall remain in full force and effect until the Effective Date.

## H.  Revesting of Assets

Except as otherwise provided in the Plan, pursuant to § 1141 of the Code, the property of the Estate of the Debtor, shall revest in the Reorganized Debtor on the Effective Date, free and clear of all Liens, Claims and interests of holders of Claims and Equity Interests, except as otherwise provided in the Plan or the Confirmation Order.

## I.  Injunction Related to Confirmation

Upon the Effective Date of the Plan, all Persons who have been, are or may be holders of Claims (including Late Filed Claims) against the Debtor, shall be enjoined from taking any actions against or affecting the Debtor, or the Reorganized Debtor, on account of such Claims or Equity Security Interest (other than actions brought to enforce any rights or obligations under the Plan), including without limitation:

1.  Against the filing, commencing, conducting or continuing in any manner, directly or indirectly, any suit, action or other proceeding (including, without limitation, any proceeding in a judicial, arbitral, administrative or other forum) against or affecting the Debtor, with respect to any property of any of the foregoing or any direct or indirect transferee of any property of, or direct or indirect successor in interest to, any of the foregoing, or any property of any such transferee or success except as specifically authorized in the Plan;

2.  Enforcing, levying, attaching (including, without limitation, any prejudgment attachment), collecting or otherwise recovering by any means or in any manner, whether directly or indirectly, any judgment award, decree or other Order against the Debtor, with respect to any property of any of the foregoing or any of the direct or indirect transferee of any property of, or direct or indirect successor in interest to, any of the foregoing, or any property of any such transferees or successor, except as specifically authorized in the Plan;

3.  Creating, perfecting or otherwise enforcing in any manner, directly or indirectly, any liens or encumbrances against the Debtor, with respect to any property of any of the foregoing or any direct or indirect transferee of any property of, or direct or indirect successor in interest to, any of the foregoing, or any property of any such transferee or successor except as specifically authorized in the Plan;

4.  Setting-off, seeking reimbursement or contribution from or subrogation against or otherwise recouping in any manner, directly or indirectly, any amount against any liability owed to the Debtor, or any direct or indirect transferee of any property of, or successor in interest to, any of the foregoing except as specifically authorized in the Plan; or

5.  Proceeding in any manner and any place with regard to liquidating any Claim in any forum other than United States Bankruptcy Court for the Southern District of Florida or, if that Court does not have jurisdiction thereon, in the United States District Court for the Southern District of Florida or in such forum deemed appropriate by the Debtor.

## J.  Votes Solicited in Good Faith

The Debtor has, and upon confirmation of the Plan shall be deemed to have, solicited acceptances of the Plan in good faith and in compliance with the applicable provisions of the Bankruptcy Code, and on account of such solicitation will not, be liable at any time for the violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of the Plan.

## K.  Legal Proceedings

### 1.  Potential Bankruptcy Causes of Action

Except as otherwise provided expressly in Debtor's Plan of Reorganization, including, without limitation, subsection (b) below, or in any contract, instrument, release or other agreement entered into in connection with the Plan or by Order of the Court, in accordance with § 1123(b) of the Bankruptcy Code, the Reorganized Debtor shall retain and may enforce any claims, rights, and causes of action under §§ 544 through 550, inclusive, of the Bankruptcy Code or any other applicable law. Debtor may pursue any such claims, rights and causes of action in accordance with what it determines to be in its best interests. Debtor is not able to determine the viability of the potential causes of action set forth above at the current time, nor has the Debtor determined a cost benefit analysis of said actions. As a result, Debtor does not intend to pursue preference, fraudulent conveyance, or other avoidance actions.

### 2. Preservation of Claims and Causes of Action

Debtor shall retain the right to prepare, file, pursue, prosecute, and settle the causes of action, whether or not such causes of action have been asserted or commenced as of the Effective Date, as a representative of the estate pursuant to 11 U.S.C. §1123(b)(3)(B).

To the extent that certain causes of action are filed by the Debtor, and are not resolved prior to the Effective Date, such causes of action will re-vest in the Debtor pursuant to the terms of the Plan.

## L. **Notices**

Any notice described in or required by the terms of this Plan or the Code and Rules shall be deemed to have been properly given when actually received or if mailed, five days after the day of mailing, if such shall have been sent by certified mail, return receipt requested, and if sent to:

The Reorganized Debtor addressed to:    Jorge A. Alvarez, DDS, P.A.
                                        8993 Okeechobee Blvd., Ste. 102
                                        West Palm Beach, FL 33411

With copies to:                         Van Horn Law Group, P.A.
                                        330 N. Andrews Avenue, Suite 450
                                        Fort Lauderdale, Florida 33301

and                                     Office of the U.S. Trustee
                                        51 SW First Avenue, Room 1204
                                        Miami, FL 33130

## ARTICLE VII
*Confirmation and Effectiveness of the Plan*

### A. Conditions Precedent to Confirmation

The Plan shall not be confirmed by the Court unless and until the following conditions shall have been satisfied or waived.

(i) The Confirmation Order shall be in form and substance reasonably acceptable to the Debtor and include, among other things, a finding of fact that the Debtor and the Reorganized Debtor, acted in good faith within the meaning of and with respect to all of the actions described in § 1125(e) of the Code and are, therefore, not liable for the violation of any applicable law, rule or regulation governing such actions; and

(ii) The Confirmation Order shall have been entered and shall be a Final Order (with no modification or amendment thereof), and there shall be no stay or injunction that would prevent the occurrence of the Effective Date;

(iii) The statutory fees owing to the United States Trustee shall have been paid in full; and

(iv) All other actions, authorizations, filings consents and regulatory approvals required (if any) shall have been obtained, effected or executed in a manner acceptable to the Debtor and remain in full force and effect or, if waivable, waived by the Person or Persons entitled to the benefit thereof.

### B. Effect of Failure

If each condition to the Effective Date specified in the Plan has not been satisfied or duly waived within ninety (90) days after the Confirmation Date, then upon the filing of a motion by the Debtor made before the time that all conditions have been satisfied or duly waived, the Confirmation Order will be vacated by the Court; provided, however, that notwithstanding the filing of such a motion, the Confirmation Order shall not be vacated if each of the conditions to the Effective Date is either satisfied or duly waived before the Court enters an order granting the relief requested in such motion. If the Confirmation Order is vacated, the Plan shall be deemed null and void in all respects, including without limitation the discharge of Claims pursuant to section 1141 of the Code and the assumptions or rejections of executory contracts and unexpired leases as provided by the Plan, and nothing contained herein shall (l) constitute a waiver or release of any Action by, or Claims against, the Debtor or (2) prejudice in any manner the rights of the Debtor.

### C. Waiver of Conditions

The Debtor may waive one or more of the conditions precedent to confirmation of the Plan, or the condition precedent to effectiveness of the Plan set forth herein.  The Debtor may waive in writing one or more of the other conditions precedent to confirmation and effectiveness of the Plan, without further notice to parties in interest or the Court without a prior hearing.

## ARTICLE VIII
*Retention of Jurisdiction*

The Court shall have exclusive jurisdiction of all matters arising out of, and related to, the Case and the Plan pursuant to, and for the purposes of, §§ 105(a) and 1142 of the Code and for, among other things, the following purposes:

A.    Determination of all issues and disputes regarding title to property of the estate, and determination of all causes of action, controversies, duties or conflicts, whether or not subject to litigation or proceedings pending as of the Confirmation date, between the Debtor and any other party, including but not limited to, any right of the Debtor to recover assets pursuant to the provisions of the Code and Rules.

B.    Fix allowances of compensation and reimbursement of expenses pursuant to §330 of the Code.

C.    Correct any defect, cure any omission, or reconcile any inconsistency in this Plan or the Order of Confirmation as may be necessary or appropriate to carry out the purposes and intent of this Plan.

D.    Determine pending applications for the assumption or rejection of executory contracts and unexpired leases under §365 of the Code and determine the allowance of Claims resulting therefrom,

E.    To consider any amendments or modifications to this Plan.

F.    To issue such orders as are necessary or appropriate to carry out the provisions of this Plan, including without limitation the appointment of a person pursuant to F.R.C.P. Rule 70 and Rule 7070 of the Rules to act, execute and deliver documents on behalf of the Debtor to implement and consummate this Plan.

G.    To enjoin the interference with the implementation and consummation of the Plan, and to impose sanctions for any such interferences in accordance with Article IV herein.

H.    To liquidate damages in connection with any disputed, contingent or unliquidated claims.

I.    To hear and determine all controversies and disputes that may arise in connection with this Chapter 11 case and in connection with the interpretation and implementation of the Plan.

J.    To determine any and all applications, adversary proceedings or contested matters pending on the Confirmation Date and arising under Chapter 11 of the Code or arising in or related to the Debtor's reorganization case under Chapter 11 and Title 11 of the Code.

K.    For such other matters as may be set forth in the Order of Confirmation.

## ARTICLE IX
*Miscellaneous Provisions*

### A. Effectuating Documents and Further Transactions.

The Debtor or Reorganized Debtor, as the case may be, is authorized to execute, deliver, file or record such contracts, instruments, releases and other agreements or documents and take such actions as may be necessary or appropriate to implement, effectuate and further evidence the terms and conditions of the Plan and any notes or securities issued pursuant to the Plan.

### B. Post-Effective Date Fees and Expenses

From and after the Effective Date, the Reorganized Debtor shall, in the ordinary course of business and without the necessity for any approval by the Court, pay the reasonable fees and expenses of Professionals thereafter incurred by the Reorganized Debtor, including, without limitation, those fees and expenses incurred in connection with the implementation and consummation of the Plan.

### C. Amendment or Modification of Plan

Alterations, amendments or modifications of the Plan may be proposed in writing by the Debtor at any time prior to the Confirmation Date in conformity with section 1127(a) of the Code, provided that the Plan, as altered, amended or modified, satisfies the conditions of sections 1122, 1123 and 1129 of the Code, and the Debtor shall have complied with section 1125 of the Code. The Plan may be altered, amended or modified by the Debtor at any time after the Confirmation Date in conformity with section 1127(b) of the Code, provided that the Plan, as altered, amended or modified, satisfies the requirements of sections 1122 and 1123 of the Code and the Court, after notice and a hearing, confirms the Plan, as altered, amended or modified, under section 1129 of the Code and the circumstances warrant such alterations, amendments or modifications. A holder of a Claim that has accepted the Plan shall be deemed to have accepted the Plan, as altered, amended or modified, if the proposed alteration, amendment or modification does not materially and adversely change the treatment of the Claim of such holder. Prior to the Effective Date, the Debtor, and without the approval of the Bankruptcy Court, and without notice to all holders of Claims and Interests, insofar as it does not materially adversely affect the interests of holders of Claims and Interests, may correct any defect, omission or inconsistency in this Plan in such manner and to such extent as may be necessary to expedite the execution of this Plan.

### D. Severability

In the event that the Court determines, prior to the Confirmation Date, that any provision in the Plan is invalid, void or unenforceable, such provision shall be invalid, void or unenforceable with respect to the holder or holders of such Claims or Equity Interests as to which the provision is determined to be invalid, void or unenforceable. The invalidity, voidness or unenforceability of any such provision shall in no way limit or affect the enforceability and operative effect of any other provision of the Plan. The Court, at the request of the Debtor, shall have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void, or unenforceable, and such term or provision shall then be applicable as altered

or interpreted. The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is valid and enforceable pursuant to its terms.

**E.  Filing of Additional Documents**

On or before Substantial Consummation of the Plan, the Debtor shall file with the Court such agreements and other documents as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan.

**F.  No Admissions**

Notwithstanding anything in the Plan to the contrary, nothing contained in the Plan shall be deemed as an admission by any Person with respect to any matter set forth in the Plan or herein.

**G.  Substantial Consummation**

The Plan shall be deemed to be substantially consummated under sections 1101 and 1127(b) of the Code upon commencement of distributions under the Plan.

**H.  Inconsistency**

In the event of any inconsistency between the Plan and the Disclosure Statement, any Exhibit to the Plan or the Disclosure Statement or any other instrument or document created or executed pursuant to the Plan, the Plan shall govern. In the event of any inconsistency between the Plan and the Confirmation Order, the Confirmation Order shall govern.

**I.  Remedy of Defects**

After the Effective Date, the Reorganized Debtor may, with approval of the Court, and so long as it does not materially and adversely affect the interests of Creditors, remedy any defect or omission or reconcile any inconsistencies in the Plan or in the Confirmation Order in such manner as may be necessary to carry out the purposes and effect of the Plan and in form and substance satisfactory to the Reorganized Debtor

### ARTICLE X
*Conclusion*

The aforesaid provisions shall constitute the Plan of Reorganization of the Debtor. This Plan, when approved and confirmed by the Bankruptcy Court, shall be deemed binding on the Debtor, all creditors, and all parties in interest and their successors and assigns in accordance with 11 U.S.C. § 1141.